## EL PASO ELECTRIC CO. v. GAMBRELL.*
### (No. 1958.)

(Court of Civil Appeals of Texas. El Paso.
Feb. 3, 1927. Rehearing Denied
March 17, 1927.)

**1. Trial ⬤⟿315—That each juror put down amount he favored awarding in personal injury action and stated his reason therefor held not quotient verdict.**

That each juror put down amount he was in favor of awarding in personal injury action, where some amounts were as high as $50,000, and foreman suggested those who were for larger amounts state their reasons for amount voted and those of smaller amount state theirs, *held* not quotient verdict.

**2. New trial ⬤⟿47—Juror's statement during retirement in personal injury action he had similar injury and knew. plaintiff's sufferings held communication (Rev. St. 1925, art. 2234); "communication made to jury."**

Juror's statement to jury while in retirement that his reason for favoring large verdict in personal injury action was because he suffered from injury, and knew from his experience that plaintiff had suffered and would never fully recover, *held* "communication made to the jury," within Rev. St. 1925, art. 2234, and grant of new trial was discretionary with trial court.

**3. Jury ⬤⟿97(1)—Disqualifying bias of juror need not relate solely to party personally, but may relate to such party's case.**

It is not necessary that disqualifying bias or such preconceived ideas of juror shall relate solely to very party personally, but it may relate to such party's case as presented for trial before jury.

**4. New trial ⬤⟿42(2)—Juror, stating during deliberation he favored large verdict in personal injury action because he had similar injury and knew plaintiff's sufferings, held disqualified.**

Juror, stating to jury during their deliberation that his reason for favoring large verdict in personal injury action was because he suffered from similar injury received while participating in war, and knew from his experience that plaintiff had suffered and would never fully recover, *held* biased juror and was disqualified to sit in case.

**5. Evidence ⬤⟿553(3)—Hypothetical question whether condition in which medical witness found plaintiff would result from accident held not error as assuming fact, in view of testimony.**

Hypothetical question and answer whether condition in which medical witness found plaintiff would likely result from accident complained *held* not error as assuming plaintiff had been thrown over back of seat, where plaintiff testified he was thrown over back of front seat of automobile by impact when struck by street car, and medical witness had personally examined plaintiff and had X-ray pictures of supposed injuries.

**6. Evidence ⬤⟿547—It was no objection to answer of medical witness before court that predicate for answer laid by interrogation had not been before jury.**

In examination of medical witness in personal injury action, where witness testified in answer to question, "there was reasonable probability of development of tubercular spine" in plaintiff, it was no objection that predicate for answer, laid by interrogation of witness before court in absence of jury, had not been put before jury.

**7. Evidence ⬤⟿546—Whether expert witness has qualified is for trial court's determination, since purpose of inquiry is that court may determine admissibility of evidence.**

Whether witness has qualified as expert is primarily for determination of trial court, since purpose of inquiry is that court may properly determine admissibility of evidence.

**8. Appeal and error ⬤⟿926(1)—In absence of showing abuse on record, court's ruling in admitting evidence will not be reviewed.**

Ruling of court in admitting evidence will not be reviewed unless record shows abuse of discretion in admission thereof.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by J. H. Gambrell against the El Paso Electric Company. Judgment for plaintiff, a new trial was denied, and defendant appeals. Reversed and remanded.

Goggin, Hunter & Brown, of El Paso, for appellant.

Isaacks & Lattner, of El Paso, for appellee.

WALTHALL, J.   Dr. J. H. Gambrell brought this suit against El Paso Electric Company, a street car corporation, to recover damages for personal injuries alleged to have been sustained by him while driving his automobile on San Antonio street, in the city of El Paso. He alleges that while driving his car east on San Antonio street, and when near the intersection of said street with Mesa avenue, a traffic officer of the city of El Paso, stationed at the intersection of said streets and directing traffic under the said city ordinances, signaled the east and west traffic on San Antonio street to stop for the north and south traffic to pass on Mesa avenue, and that, observing said signal, he stopped his car in said street to await the signal of said officer to go forward, and that, while waiting and before said signal had been given, the El Paso Electric Company, through its employees, ran one of its street cars against his said automobile, striking it with such force as to cause him, sitting on the front seat, to be bent and snapped back over the back of said seat and jarring and shocking him and causing the injuries complained of, incapacitating him from attending to his duties as a physician and surgeon, which he alleges will, because of his injuries, and to a limited extent, continue for

years. He alleges that by reason of his injuries he has suffered pain and discomfort, and that by reason of said injuries he is made susceptible to and likely to develop certain diseases named. He also alleges that his automobile was demolished and made worthless.

He alleges that on account of his personal injuries he has been damaged in the sum of $50,000 and that his damage to his automobile is $1,500, for all of which he sues and prays judgment.

The El Paso Electric Company answered by general demurrer, general denial, and contributory negligence.

On special issues submitted to a jury, the jury found the facts causing the injuries to be as above alleged by Dr. Gambrell, and that same constituted negligence on the part of the electric company, and that said negligence was the proximate cause of the personal injuries to Dr. Gambrell and the destruction of his automobile, complained of in his petition. The jury also found on other facts submitted, but not necessary to here state, and assessed the damages for personal injuries sustained at $16,700, and the damages to the automobile at $600, for all of which judgment was rendered.

The electric company filed a motion and supplemental motion for new trial, both of which the court overruled, to which ruling exception was duly made and notice of appeal given and appeal perfected.

## Opinion.

Appellant presents six assignments of error. The first complains of certain statements and misconduct of one of the jurors to the jury in the jury room and to the jury hearing and observing same, which, appellant insists, tended to and probably did influence the return of the verdict, which appellant claims is excessive and in an amount greater than the verdict would otherwise have been. Second, that the statements and conduct of the juror disclosed that the juror had such bias in favor of appellee and his cause of action, and prejudice against appellant, as to disqualify him from serving upon the jury, and to show that the juror was not a fair and impartial juror, though he had answered upon his voir dire that he was not biased or prejudiced and knew of no reason why he could not make a fair and impartial juror. The third, fourth, and fifth assign error in permitting certain questions to physicians, and their answers thereto. The remaining proposition insists that the verdict for the personal injuries was grossly excessive, and was influenced by the improper statements of the juror before the jury.

The matter of the misconduct of the juror in making the statement to the jury, and of the jury in hearing same, occurred in the jury room after the evidence was concluded, the charge given, and the jury had retired to consider of their verdict. The matter was brought to the attention of the court by appellant's supplemental motion for new trial. Eleven of the jurors in the trial of the case were brought before the court and their statements taken in open court on the hearing of the motion. The full statement of the jurors on the hearing of the motion embraces some 37 or more pages of the record. The evidence taken on the hearing of the motion is incorporated in the bill of exceptions by question and answer, and the bill of exceptions is approved by the trial court without qualification. We will, by reason of its volume, state only some of its salient features taken from the testimony of different jurors.

One of the jurors named Biles, in a statement to the jury of some length, covering a period of some 4 or 5 minutes, said that he had had a similar injury to that of Dr. Gambrell, while a commissioned officer of the World War, by shell shock, his back torn up, that he was not able to work, the doctors had informed him that he would never fully recover. He offered to remove his clothes and show the injuries to his back. He spoke of having a broken spine and knew what suffering he had suffered, his pain was very great, and from what he suffered he knew what Dr. Gambrell would have to suffer; that probably Dr. Gambrell would never be well, wanted to give a verdict for $50,000.

All of the jurors spoke of the statements made by Juror Biles, some remembering some parts of what he said which others did not remember, and what we have stated is taken from the statement of different jurors. Each of the jurors said that the statements of Juror Biles had no influence whatever on him as to the amount of his verdict. The amount of the verdict voted for by the individual jurors ranged from $5,000 to $50,000, Biles voting for the largest sum.

[1] At the close of the hearing on the motion, at the request of appellant, the trial court filed his finding of fact and conclusion of law on the matter of the motion. The court found, in substance, that the jury in arriving at their verdict returned, after disposing of all issues other than the amount of the damages for personal injuries, proceeded to the consideration of such issue. Each juror put down the amount he was in favor of placing as an answer to such issue. Some of the amounts were as high as $50,000 and others as low as $5,000. The foreman, or some of the jurors, suggested that those who were for the larger amounts state their reasons for the amount voted, and that those in favor of the smaller amounts state theirs. While that was in progress Juror Biles, who had voted for $50,000, said that he had been a soldier, participating in the World War, and had a spinal injury caused by a shrapnel, and was now drawing compensation therefor from the government. He described the seriousness of his spinal injury and the suffering resulting therefrom from the standpoint of his experi-

ence, at some length, perhaps 4 or 5 minutes. Some one stated that this had nothing to do with the matter. These remarks of Mr. Biles were without influence on the verdict. They seemed to have bored most of the other members of the jury. The court further found that the verdict was not a quotient verdict. The court concluded that:

"Whether the acts of Juror Biles in discussing his personal experience was or was not misconduct on his part it was without influence on the verdict returned. Hence the motion was overruled."

[2] We think under the facts shown the verdict was not a quotient verdict. The questions of the misconduct of Juror Biles, the hearing of his statements by the jury as to his own injuries, and the bias of Juror Biles in serving upon the jury, after he had answered on his voir dire that he was not biased and knew of no reason why he could not serve impartially upon the jury, are more difficult of solution and disposition by reason of the trial court's specific findings of fact on the motion for new trial. The court had instructed the jury, as shown by the record, that in their consideration and discussion of the case they would confine themselves strictly to the evidence introduced on the trial. The Juror Biles was permitted to state in detail his own injuries, somewhat similar to those of Dr. Gambrell, and, according to some of the jurors, to reason therefrom that, as he had suffered from his injuries, Dr. Gambrell would likewise, in the future suffer from his injuries, and that from his own experience from his injuries, he was voting the greatest amount of damages for Dr. Gambrell. What Juror Biles stated as to his injuries was not introduced on the trial, and evidently would not have been heard as evidence in the case. It also seems clear that because of his own injuries Juror Biles was biased in favor of one who, in his judgment, had received injuries similar to his own, and would suffer as he had. Now we do not mean to say that the jury or Juror Biles purposely violated the specific direction of the court to confine their consideration and discussion to the evidence introduced on the trial. The foreman had called upon the jurors to state their reasons for the several amounts they were voting for as damages for the personal injuries suffered by Dr. Gambrell, no doubt intending that the reasons given should arise from the evidence heard on the trial. But the Juror Biles was not restrained and was permitted to speak at some length, 4 or 5 minutes, on his own personal injuries, and to reason therefrom as above.

Article 2234, Rev. Civ. Stat. 1925 (formerly article 2021), provides that, where the ground of the motion for new trial is because of any communication made to the jury or that they received other testimony (than heard on the trial), the court shall hear evidence thereof from the jury or others, in open court, and may grant a new trial if the testimony received or the communication made be material. Here the jury were considering the amount to be awarded Dr. Gambrell for the personal injuries sustained, the extent of the injuries, whether temporary or lasting, the extent to which he would be hindered in his profession as a physician, etc., were facts to be considered, and the communication of Juror Biles bore directly on the matters then being considered. The granting or not of the new trial is then discretionary with the trial court. As stated, the trial court found that the remarks of the juror were without influence on the verdict, his finding, based largely, no doubt, on the statements of the jurors to that effect.

In Letsinger v. Panhandle & S. F. Ry. Co. (Tex. Civ. App.) 286 S. W. 1107, a suit by appellant to recover damages on account of the death of his wife and minor daughter as a result of a collision at a public road crossing, and where one of the jurors testified, on the hearing of the motion for new trial, that he went with another juror to the scene of the accident to make observations, and through curiosity, and discussed to the jury what they saw, and made up their minds from what they saw at the crossing, the Amarillo court said:

"Whatever may have been the rule heretofore as to the effect of the misconduct of the jury, and the discretion of the trial court, and of this court in passing upon motions for rehearing based thereon [the former] rule no longer prevails. When the fact of misconduct has been shown, very little weight is given by later opinions from the Supreme Court and Commission of Appeals to the testimony from the jurors as to what effect the facts constituting the misconduct had or did not have upon them in making up their verdicts. It is held that as a matter of law there may be error, and the issue is made to turn on a reasonable doubt as to whether the misconduct might have affected the purity of the verdict. Gulf, C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 278 S. W. 839; Id. (Tex. Com. App.) 276 S. W. 895; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Hines v. Parry (Tex. Com. App.) 238 S. W. 886; Parker v. Miller (Tex. Com. App.) 268 S. W. 727; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104."

In the last case cited, where one of the jurors visited the scene of the accident and viewed the situation himself, Judge Powell said:

"We regret to reach the conclusion that a reversal of this case is necessary. But the verdicts of our juries must be zealously safeguarded from all outside influence. The courts must maintain the efficiency of our jury system, if that priceless system is to remain the pride of our race. Our appellate courts, for years and years. have been urging trial courts to warn the juries against every kind of improper conduct. Not only so, but to grant new trials

promptly when situations of this kind arise. There will be a great saving of time and expense to litigants if the trial courts themselves will adopt the practice of setting verdicts aside promptly when misconduct appears, and its effect upon the jury is reasonably doubtful."

[3] .Here, without stating in detail the ballots taken on the damages to be assessed, the amounts voted took an exceedingly wide range. .Juror Biles did not testify on the hearing of the motion. From the record before us it seems safe to say, as manifested by this discussion, that by reason of his own injuries Juror Biles was not impartial but biased in favor of an exceedingly large verdict, and the effect of his statements of his own injuries on other members of the jury is, we think, at least reasonably doubtful. It is said in G. C. & S. F. Ry. Co. v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 613, that a fair and impartial trial by a fair and impartial jury is what the law exacts, and this requirement becomes a delusion if men with bias or prejudice or preconceived ideas of the rights of one are allowed to sit in judgment on his case. It is not necessary that the disqualifying bias or such preconceived ideas shall relate solely to the very party personally, but it may relate to such party's case as presented for trial before the jury. Rhodes v. El Paso & S. W. Ry. Co. (Tex. Com. App.) 248 S. W. 1064, 27 A. L. R. 1048; Smith v. Allbright (Tex. Civ. App.) 279 S. W. 852; Kansas City L. Ins. Co. v. Elmore (Tex. Civ. App.) 226 S. W. 715; Couts v. Neer, 70 Tex. 468, 9 S. W. 40.

[4] We do not mean to hold that the verdict rendered is excessive. We are not passing upon the question of the excessiveness of the verdict or judgment. We do mean to 'hold that the record shows without any controversy, and by all eleven of the jurors examined on the hearing of the motion, that Juror Biles made improper statements and argument before the jury as to his own injuries, and, according to some of the jurors, made it appear that they were similar in kind to those under investigation; and we think that it is, at least, reasonably doubtful as to the effect such statements and argument based thereon had upon other members of the jury.

It is clear, we think, that Juror Biles was a biased juror, and that by reason thereof was disqualified to sit in that particular case.

In Rhodes v. Ry. Co., supra, the Commission of Appeals held that the record showed that at least one of the jurors, and possibly one other, had such bias against the cause as to disqualify him or them to sit as jurors, and that because thereof the party who was then ·being tried had not a trial of his cause before a fair and impartial jury as guaranteed by the Constitution and laws of this state; that court recommended that the case be reversed and remanded for another trial, which holding and recommendation was adopted by the Supreme Court.

We think the first and second propositions should be sustained, and the case reversed and remanded.

The other propositions complain of the admission of hypothetical questions and answers thereto.

[5] Dr. Gambrell had stated that he was thrown backward over the back of the front seat on which he was sitting, with such force that his hat on his head was thrown to the top of the back seat of the automobile, and with such force as to fracture one" of his front teeth. The above facts were embraced in a hypothetical question to Dr. Casellas, and he was asked:

"Would there result an injury therefrom other than the injury to his teeth?" He answered, "Yes."

The question was then asked the witness:

"What would be the most likely result from such injury?"

Witness answered:

"The most likely injury would be the tearing of the supporting ligaments of the spine, although that kind of compressed-pressure on the butt of the vertebræ is like getting likewise a fracture of the transverse process."

The witness was then asked:

"State whether or not, Doctor, there would be a likelihood of or probability of bone injury from such."

Witness answered:

"Yes; there would."

The witness was asked:

"State, Doctor, whether or not such injury, as you have just stated, would be most likely to occur from such a shock, are in part or in the whole the same kind of injuries you found from your examination of Dr. Gambrell, and the X-rays that were made for him?"

The witness answered:

"In part."

The questions and answers are not objectionable, we think, as assuming a fact that Dr. Gambrell had been thrown over the back of the seat on which he was sitting, nor too speculative, nor was the answer "to be likely to result" too speculative and uncertain as not being "reasonably probable" that the result stated would follow. Appellant's contention is that the questions and answers deal with what would possibly, and not probably, happen. The hypothetical question seems to follow closely and correctly the facts stated by Dr. Gambrell as to his being "thrown violently across the back of the seat in which I was sitting." Dr. Gambrell used other expressions as to how he was thrown when the impact came, but the question asked was in the language of Dr. Gambrell, as above. Dr. Casellas had taken X-ray pictures of Dr. Gambrell's supposed injuries, had personally ex-

amined Dr. Gambrell, and testified fully as to the conditions to which the hypothetical question was directed, and the point of the inquiry seemed to be as to whether the condition in which he found Dr. Gambrell would likely result from the accident complained of. We have concluded that the proposition presents no reversible error.

Practically similar questions were asked Dr. Kraus, and answers given. Dr. Kraus also had made a thorough examination of Dr. Gambrell in connection with the readings and interpretation of the X-rays, and testified fully as to his conclusions. The X-ray pictures were exhibited to the jury.

We think the record presents no reversible error in the court's ruling upon the questions and answers as to Dr. Kraus.

Dr. H. E. Stevenson also had examined Dr. Gambrell for spinal injuries or injuries to his back. Had examined him several times and had studied and interpreted X-rays made by other doctors, naming them, and testified fully as to the injuries and in connection and interpretation of the X-rays. In answer to a question calling for a general prognosis of Dr. Gambrell's case, the witness said:

"It is a known fact that injury to the spinal column predisposes a person to certain later conditions, tuberculosis of the spine and tubercular spondylitis."

[6] Objection was made that the answer was not responsive to the question, was speculative, and not confined to the case under investigation. The jury was retired. Then followed a series of questions and answers, and, without repeating them in their verbiage, we will, for brevity, state them as in appellant's argument in its brief. The witness said in testifying before the court, when the predicate was sought to be laid for the introduction of his conclusion that Dr. Gambrell would probably have tuberculosis of the spine arising through the injury to his spine, that he would not say that tubercular condition of the spine was nearly always preceded by injury to the spinal column; that injury to the spine could predispose the person injured to tuberculosis of the spine; that it did so in certain percentage of cases; that in most cases tuberculosis of the spine was the result of physical injuries, but most cases of physical injuries did not result in tuberculosis of the spine; that physical injury to the spine was not ordinarily followed by tuberculosis—not in a majority of cases; that he would not say there was a reasonable probability that the injuries Dr. Gambrell sustained would result in a tubercular condition; that he thought it a matter of per cent., "a percentage of likelihood." The trial judge asked:

"Would you say it is more probable that it would or would not?"

Then follow several questions by the court and answers by the witness which we deem unnecessary to state, all going to the degree of probability of the development of tuberculosis generally, in cases of injury, but having no direct application to the case at bar. The court then asked:

"Would you say in Dr. Gambrell's case that there was a reasonable probability of development of tubercular spine?"

The witness answered:

"I do, because I know Dr. Gambrell personally."

One objection to the answer going to the jury was that the predicate for the answer, laid by interrogation of the witness before the court in the absence of the jury, should have been put before the jury. The cases referred to do not sustain the appellant's contention.

[7] Whether a witness has qualified as an expert is primarily for the determination of the trial court. The purpose of the inquiry is that the court may properly determine the admissibility of evidence sought to be introduced. Dallas C. E. St. Ry. Co. v. English, 42 Tex. Civ. App. 393, 93 S. W. 1096; El Paso & S. W. Ry. Co. v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 988.

[8] The ruling of the court in admitting the evidence will not be reviewed unless the record shows an abuse of his discretion.

In view of another trial, we refrain from passing upon the excessiveness of the verdict.

For reasons stated in discussing the first two propositions, the case is reversed and remanded.