HARDWARE MUTUAL CASUALTY COMPANY, now Sentry Insurance, a Mutual Company, Appellant,

v.

Willie Grace WESBROOKS et al., Appellees.

No. 8420.

Court of Civil Appeals of Texas, Amarillo.

May 28, 1974.

Addendum June 17, 1974.

Gibson, Ochsner, Adkins, Harlan & Hankins, Wayne P. Sturdivant, Amarillo, for appellant.

Fillmore, Parish, Martin, Kramer & Fillmore, H. Dustin Fillmore, Wichita Falls, for appellees.

ROBINSON, Justice.

The trial court entered judgment on the verdict for cross-plaintiffs, Willie Grace Wesbrooks, et al., in this workmen's compensation case. Appellant, cross-defendant insurance company, challenges by appropriate points of error the evidentiary support for jury findings that deceased, M. P. Wesbrooks, as a result of strain or overexertion in the course of his employment, suffered a heart injury on July 20, 1971, which was the producing cause of his death. We hold that the evidence is sufficient to support these findings. Appellant also challenges findings that $11,840.80 in medical and funeral bills were the result of the July 20, 1971 heart injury. We hold that the evidence is insufficient to support the finding as to $11,090.80 of such bills.

The evidence shows that M. P. Wesbrooks had had a myocardial infarction in 1960, but that thereafter he had lived a vigorous life and appeared to be in good health until July 20, 1971. On that date, while moving heavy jacks in the course of his employment for Wesbrooks Hydraulic Equipment Service Company, he suffered chest pains and difficulty in breathing. He complained that he was having a hard time breathing, and he "complained with his heart." After this occurrence, Wesbrooks was never well and was never able to do a full day's work.

On July 23, 1971, Wesbrooks saw his family physician, Dr. Lowry, complaining of chest pains and continued shortness of breath. Dr. Lowry referred him to Dr. Steve Powers for an electrocardiogram, which Dr. Powers interpreted as normal. Wesbrooks' symptoms persisted and Lowry referred him to Dr. Wayne Reser on August 6, 1971, for a lung examination. Dr. Reser determined that emphysema was not sufficient to cause the degree of symptomology experienced by Wesbrooks. On September 2, 1971, Lowry saw Wesbrooks, who was suffering from severe pain in his chest, cold clammy sweat, nausea and vomiting. He was admitted to the hospital with a diagnosis of acute myocardial in-

farction, where he came under the care of Dr. Julian Sleeper, a cardiologist.

On September 25, Dr. George LeBeau, Jr., a cardiologist, took over the treatment of Westbrooks from Sleeper. Except when he was on vacation, Lowry continued to see Wesbrooks daily. Wesbrooks was dismissed from the hospital on November 14, 1971.

Still under the care of Dr. LeBeau, he was readmitted on April 9, 1972, suffering from pneumonitis, an upper respiratory infection. Dr. Lowry testified that he did not follow Wesbrooks during this hospitalization. While in the hospital, Wesbrooks developed chest pains on April 14, 1972. He was diagnosed as having a coronary thrombosis, and went into ventricular fibrillation caused by acute myocardial infarction. The episodes of cardiac arrest continued until his death on April 30, 1972.

Appellant contends that no proper predicate was laid to show that Dr. W. P. Lowry had the experience or necessary training to speak as an expert in matters addressed to him and that his opinion testimony must be disregarded in determining whether the evidence supports the jury findings. Whether a witness is qualified to give opinion testimony as an expert is a preliminary question to be determined by the trial judge. El Paso Electric Co., v. Gambrell, 292 S.W. 577 (Tex.Civ.App., El Paso 1927, writ dism'd); Davis v. Cochran, 275 S.W. 423 (Tex.Civ.App., San Antonio 1925, no writ). His finding in that respect will not be disturbed in the absence of a clear abuse of discretion. Liberty Universal Insurance Company v. Gill, 401 S.W.2d 339 (Tex.Civ.App., Houston 1966, writ ref'd n. r. e.).

In the case before us, the parties submitted the entire deposition of Dr. Lowry to the trial judge so that he had before him all of the testimony in the deposition concerning Dr. Lowry's qualifications before ruling on the admissibility of his opinion testimony. The deposition showed that Dr. Lowry is a licensed and practicing medical

doctor in Wichita Falls, Texas, having graduated from the University of Texas at Galveston with a medical degree in 1917, after which he interned at Cleveland City Hospital in Cleveland, Ohio. He is a general practitioner and has never run an electrocardiogram and does not interpret electrocardiograms. He has treated heart patients and had a "lot of occasions" to diagnose heart attacks. He was Wesbrooks' family doctor.

It is not necessary for a doctor to be a specialist in the particular branch of medicine about which he is called to testify, so long as he possesses knowledge and skill not possessed by people generally. Utilities Indemnity Exchange v. Burks, 7 S.W.2d 1112, 1114–1115 (Tex.Civ.App., San Antonio 1928, writ dism'd); Beasley v. Faust, 217 S.W. 179 (Tex.Civ.App., San Antonio 1919, no writ); Pecos & N. T. Ry. Co. v. Coffman, 121 S.W. 218 (Tex. Civ.App.1909, writ ref'd); 32 C.J.S. Evidence § 546(92) (1964); 2 McCormick & Ray, Texas Evidence, §§ 1401 and 1427 (2d ed. 1956). We do not find that the trial court abused its discretion in admitting Dr. Lowry's opinions concerning Wesbrooks' injuries and their probable cause and effect. Any defects or discrepancies in the testimony itself did not relate to its admissibility, but were matters of the weight to be given the testimony and for evaluation by the trier of the facts.

The first question to be resolved by this court is whether the evidence is sufficient to support the jury findings that Wesbrooks suffered a heart injury on or about July 20, 1971, as a result of a strain or overexertion in the course of his employment.

Dr. Lowry testified unequivocally that as a result of moving jacks on July 20, 1971, Wesbrooks sustained an injury to his heart which was a producing cause of his death.

In answer to a hypothetical question, Dr. Sleeper testified, "With the information given me I would state that it would be probable that he had a myocardial infarction on this date (July 20, 1971)." On cross examination, in answer to another hypothetical question, he said, "I never definitely stated he had a myocardial infarction on July 20, 1971. The question was posed to me if it was possible that he could have had one then, and almost anything is possible in medicine, so that is possible." Dr. Sleeper further testified that a person who has had a heart attack can have a normal EKG; that if one showed the same electrocardiogram to five cardiologists he might get five different interpretations running all the way from absolutely normal to positive and that because of this subjective element in interpretation, he would not rely on anyone else's interpretation of an EKG.

Dr. LeBeau testified that the blood vessels to Wesbrooks' heart were restricted because of pre-existing arteriosclerosis; that a strain caused by physical exertion would cause the heart to demand a greater supply of blood; that because of the restriction of the coronary arteries the supply of blood to the heart would be reduced; that if the heart did not get sufficient blood to supply its demands, damage to the heart could result; that it was possible that such damage would not be picked up by an EKG thereafter; and that damage to the heart would produce pain in the chest, shortness of breath, and dizziness. He further testified that Wesbrooks had given him a history of shortness of breath, chest pain, dizziness and weakness between the time he strained by picking up a jack and the time he came under LeBeau's care, and that these symptoms were compatible with injury to the heart.

There is ample evidence from which the jury could believe that prior to July 20, 1971, Wesbrooks was an active, vigorous man with an underlying condition of arteriosclerosis; that on that date there was an occurrence on the job which, according to medical testimony, was competent to damage the heart of a person suffering from arteriosclerosis; that there was a prompt

onset of symptoms consistent with such damage, followed by disability.

Applying the standard set forth in Baird v. Texas Employers' Insurance Association, 495 S.W.2d 207 (Tex. 1973) and Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex. 1969), we hold that the evidence is sufficient to support the jury finding that a strain in the course of employment resulted in a heart injury.

■ We next consider whether the evidence is sufficient to support the jury finding that the injury of July 20, 1971, was a producing cause of Wesbrooks' death on April 30, 1972. In this regard, it is well settled that an injury may be compensable even though aggravated by an existing disease, or by a disease occurring after the injury. Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357 (1937); St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744 (1962).

Both Dr. Sleeper and Dr. LeBeau testified that neither a heart injury nor a coronary thrombosis causes a subsequent coronary thrombosis. A thrombosis is a blood clot caused by the underlying condition of arteriosclerosis rather than by a previous infarct or injury to the heart. Dr. Sleeper testified that earlier damage would be a contributing cause of Wesbrooks' death in that the greater the previous damage to the heart muscle the less able an individual is to withstand subsequent heart attacks with further damage to the heart muscle.

Dr. George LeBeau testified as follows:

"The combination of these damages made his heart an inefficient pump. The inefficient pump, plus him having the disease of the blood vessels to the heart, are all factors that go in causing more damage to occur, which led to his ultimate death."

■ Dr. Lowry testified that the injury to the heart was, in his opinion, a producing cause of Wesbrooks' death. His testimony amounts to testimony of reasonable probability articulated by a scientific expert. See Parker v. Employers Mutual Liability Ins. Co. of Wis., 440 S.W.2d 43 (Tex. 1969).

■ After reviewing all of the evidence, including that opposed to the verdict, as well as that favorable to the verdict, we are of the opinion that the evidence is sufficient to support the jury's findings that in the course of his employment, Wesbrooks suffered a heart injury on July 20, 1971, that was a producing cause of his death.

Appellant's remaining points of error challenge the evidentiary support for jury findings that $11,840.80 in medical and funeral expenses resulted from the heart injury in question. It was stipulated that the expenses were incurred and were reasonable and necessary. The only question is one of causation. The stipulation reads as follows:

"I.

"IT IS AGREED AND STIPULATED by and between the parties, plaintiff and defendant WILLIE GRACE WESBROOKS, that the following medical and funeral expenses were incurred by M. P. Wesbrooks and the Estate of M. P. Westbrooks:

| | |
|---|---|
| 1) Wichita General Hospital— | $9,650.00 |
| 2) Wichita Falls Clinic-Hospital— | 200.00 |
| 3) Medical and Surgical Clinic— | 893.50 |
| 4) Bob Moss Medical Arts Pharmacy— | 347.30 |
| 5) Dr. Stephen A. Powers— | 15.00 |
| 6) Dr. Wayne A. Reser— | 37.00 |
| 7) Drs. Allen, Brown and MacGeyer— | 13.00 |
| 8) Dr. W. P. Lowry— | 185.00 |
| 9) Funeral Expense— | 500.00 |

"II.

"It is further AGREED and STIPULATED that the medical and funeral expenses as set forth hereinabove were reasonable and customary for the reasonable and necessary services that were required in the treatment and burial of

M. P. Wesbrooks in the locality where incurred.

## "III.

"It is NOT STIPULATED that the hereinabove set forth medical and funeral expenses were incident to the last sickness of M. P. Wesbrooks as a result of any alleged injury received in the course of his employment, nor that any of the foregoing medical and funeral expenses were reasonably required as a result of any injury sustained by M. P. Wesbrooks in the course of his employment."

■ Appellee relies on the testimony of Dr. Lowry to establish that the medical expenses in question were a result of a heart injury on July 20, 1971. Dr. Lowry was first asked, "Were you familiar with the medical services and treatment that were rendered to M. P. Wesbrooks from on or about July 23, 1971, up to the time of the death of M. P. Wesbrooks on or about April 30, 1972, as evidenced by the bill set forth below. (There follows the same list of charges shown in the stipulation)." The statement of facts shows no answer to that question. Over objection by appellant, Dr. Lowry was then permitted to testify that the medical expenses, as listed, resulted from the heart injury in question. The record before us reveals no testimony by Dr. Lowry that he knew what services were included in bare totals on the list shown him or why the charges were made except for $250.00 in charges by himself, Dr. Powers, and Dr. Reser. Neither the list shown Dr. Lowry, nor the stipulation shows the nature or the dates of the services included.

The evidence shows that some portion of the hospital charges and doctor bills were incurred for medical services for treatment of an upper respiratory problem which, so far as the record shows, was not related to a heart injury on July 20, 1971. Even if we assume that all treatment rendered for cardiac problems after July 20, 1971, was a result of the injury of that date, we are unable after a careful study of the record to determine what those charges were or to separate them from other charges incurred.

We conclude that the evidence is insufficient to support the jury finding of medical and funeral expenses except for $250.00 of medical expense and the $500.00 funeral expense.

■ In actions under the workmen's compensation act, liability and damages are indivisible or so closely related that they should not be tried piecemeal; therefore, the liability part of the judgment cannot be affirmed and a portion of damages reversed and remanded. Texas Employers' Ins. Assoc. v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929 (1942).

■ The judgment entered on the verdict is excessive in the amount of $11,090.-80. Appellee may make a remittitur by filing a release of said amount of the judgment within 15 days from this date. Upon such release being filed, the judgment will be accordingly modified and affirmed as modified. Otherwise, the cause will be reversed and remanded to the trial court. Rules 439 and 440, Texas Rules of Civil Procedure.

## ADDENDUM TO OPINION

Appellee timely made the suggested remittitur by filing on June 11, 1974, a release of $11,090.80 of the judgment entered by the trial court. We order that 38 per cent of the costs of this appeal be taxed against appellee and 62 per cent be taxed against appellant. Rules 435 and 448, Texas Rules of Civil Procedure.

The judgment as modified is affirmed.