**BURLINGTON NORTHERN RAILROAD COMPANY,**
Appellant,

v.

**William Louis HARVEY, Appellee.**

**No. C14–85–566–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 31, 1986.

Rehearing Denied Sept. 11, 1986.

Kent W. Robinson, Houston for appellant.

J. Donald Bowen, Stephen W. Hanks, George E. Pletcher, Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a judgment in favor of plaintiff, William Louis Harvey ("Harvey") for damages resulting from personal injury against Burlington Northern Railroad Company ("BN"). The major issue, and one of first impression, concerns whether the venue provision for personal injury and wrongful death suits against railroad companies is mandatory or permissive under the new venue statute. The trial court found the statute to be permissive and overruled Burlington's motion to transfer venue from Brazoria County to Potter County where the accident occurred. In four points of error, BN complains of that pre-trial ruling and also contends the trial court erred in admitting the testimony of two physicians at trial. We affirm the judgment of the trial court.

Harvey was employed with Burlington Northern Company as a train brakeman. In connection with his employment, Harvey resided in and worked out of Randall County, Texas. On September 26, 1982, Harvey sustained injuries when he slipped and fell

while dismounting the train in Potter County. Thereafter, Harvey filed suit in Brazoria County under the provisions of the Federal Employers Liability Act (F.E.L.A.) and the Boiler Inspection Act to recover monetary damages. After BN's motion to transfer venue to Potter County was overruled by the trial court, a jury trial was held and judgment entered on the verdict in favor of Harvey for $1,059,900.00.

BN's first two points of error concern the trial court's order overruling its motion to transfer venue. Because of the technical arguments advanced by each party, a chronicle of the venue statutes is necessary to fully develop the issue. Prior to September 1, 1983, article 1995, the state's venue statute, consisting of one general rule and thirty exceptions, made no distinction on its face between mandatory and permissive venue. The courts, deprived of a clear legistative directive as to which sections were mandatory and which permissive, supplied their own interpretions. Subdivisions 23 and 25, pertaining to suits against railroads, stated in part as follows:

> 23. Corporations and associations.— ... Suits against a railroad corporation, or against any assignee, trustee or receiver operating its railway, *may* also be brought in any county through or into which the railroad of such corporation extends or is operated....
>
> .    .    .    .    .
>
> 25. Railway personal injuries.—Suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in this State, for damages arising from personal injuries, resulting in death or otherwise, *shall* be brought either in the county in which the injury occurred, or in the county in which the plaintiff resided at the time of the injury ... (emphasis supplied).

The courts construed subdivision 23 as permissive and subdivision 25 as mandatory. *See generally*, McDonald, *Texas Civil Practice*, Venue § 4.31 (Vol. I, 1981).

Therefore, prior to 1983, all actions for personal injury brought against railroads had to be filed either in the county in which the plaintiff resided or where the accident occurred. *See, e.g., Tieuel v. Southern Pacific Transportation Co.*, 654 S.W.2d 771 (Tex.App.—Houston [14th Dist.] 1983, no writ).

Effective September 1, 1983, the legislature simplified and restructured article 1995 instituting both substantive and procedural changes. The amended venue statute contained four sections bearing the following titles: (1) General Rule; (2) Mandatory Venue; (3) Permissive Venue; and (4) General Provisions. Significantly, the legislature specifically decreed which sections were mandatory and which were permissive, effectively withdrawing the issue from judicial consideration. Both of the sections dealing with suits against railroads, although reprinted verbatim, were placed under section 3, the "Permissive Venue" section of the new statute.

In 1985, the Legislature enacted the Civil Practice and Remedies Code (Code) as part of the State's continuing statutory revision program. Chapter 15 of the Code is also a recodification of the 1983 amended venue statute. Chapter 15 contains five sections, the first four being the same as the 1983 version of article 1995, and the fifth concerning suits brought in justice court. As was the case in the 1983 amendments, the sections concerning suits against railroads again appear under the third section heading—now Subchapter C. *Permissive Venue.* For clarity purposes a partial reprint of the pertinent subsections follows:

SUBCHAPTER C.
PERMISSIVE VENUE

.    .    . .    .    .

Sec. 15.034 RAILWAY PERSONAL INJURIES. A suit against a railroad corporation or against any assignee, trustee, or receiver operating any railway in this state for damages arising from personal injuries, resulting in death or otherwise, *shall* be brought *either in the county in*

*which the injury occurred or in the county in which the plaintiff resided at the time of the injury.* If the defendant railroad corporation does not run or operate its railway in or through the county in which the plaintiff resided at the time of the injury and has no agent in that county, then the suit shall be brought either in the county in which the injury occurred, or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road or has an agent. When an injury occurs within one-half mile of the boundary line dividing two counties, suit may be brought in either of those counties. If the plaintiff is a nonresident of this state, the suit shall be brought in the county in which the injury occurred or in the county in which the defendant railroad corporation has its principal office.

. . . . .

## Sec. 15.036. CORPORATIONS AND ASSOCIATIONS....

A suit against a railroad corporation or against any assignee, trustee, or receiver operating its railway may also be brought in any county through or into which the railroad of the corporation extends or is *operated.* A suit against a receiver of a person or a corporation may also be brought as otherwise provided by law.

. . . . .

## SUBCHAPTER D. GENERAL PROVISIONS

Sec. 15.061. JOINDER OF DEFENDANTS OR CLAIMS. When two or more parties are joined as defendants in the same action or two or more claims or causes of action are properly joined in one action and the court has venue of an action or claim against any one defendant, the court also has venue of all claims or actions against all defendants *unless* one or more of the claims or causes of action is governed by one of the provisions of *Subchapter B* [Mandatory Venue] requiring transfer of the claim or

cause of action, on proper objection, to the mandatory county.

. . . . .

## SUBCHAPTER E. SUITS BROUGHT IN JUSTICE COURT

Sec. 15.095. RAILROAD COMPANIES; CARRIERS. A suit against a railroad company, a canal company, or the owners of a line of transportation vehicles for *injury to a person* or property on the railroad, canal, or line of vehicles or for liability as a carrier *may* be brought in a precinct through which that railroad, canal, or line of vehicles passes or in a precinct in which the route of that railroad, canal, or vehicle begins or ends. (emphasis supplied)

. . . . .

BN raises numerous arguments in support of its contention that the trial court erred in overruling its motion to transfer venue. Before we address these arguments we think it appropriate to review the venue facts: (1) at the time of the injury, Harvey resided, and continues to reside, in Randall County; (2) the injury occurred in Potter County; (3) BN operates its trains through Brazoria County under a lease agreement with the Santa Fe Railroad Company; and (4) suit was filed in Brazoria County.

BN first argues that the 1983 amendments to article 1995 did not change the rule that in actions against railroads for personal injury, suit *must* be maintained in the county of injury or the county of plaintiff's residence. BN points out that the specific language of the 1983 venue statute as regarding railroads is identical to that found in old subdivisions 23 and 25. BN insists that because the 1983 amendments and the 1985 recodification are verbatim re-enactments of the pre–1983 venue rule, the rule must be interpreted as mandatory and not permissive. In short, BN asserts that the legislature *inadvertently* placed the venue provision concerning personal injury suits against railroad companies under the permissive rather than the mandatory sections of the new venue statutes. In

support of its contention, BN argues there is nothing in the statute or the legislative history to the 1983 amendments indicating an intent to change the nature of venue provisions governing personal injury lawsuits against railroads. BN cites to published commentary for the proposition that no substantive or procedural modification of the venue rule as regards railroads in personal injury suits was intended. *See, e.g.*, Price, *New Texas Venue Statute: Legislative History*, 15 St. Mary's L.J. 855, 872–73 (1984); 3 W. Dorsaneo, *Texas Litigation Guide*, § 61.01A (Supp.1983).

In our opinion, the fatal flaw in BN's argument is that the statute *does* reflect a legislative intent to change the venue provision regarding suits against railroads: to wit, its placement under the permissive rather than mandatory heading. Therefore, even though the *text* of the 1983 railroad venue rule is a verbatim re-enactment of its predecessor, its position under the permissive venue heading weighs heavily against BN's claim that section 15.034 must be accorded mandatory interpretation. *Accord Coastal Industrial, Etc. v. Trinity Portland*, 563 S.W.2d 916, 918 (Tex.1978). We also note that recent commentary is *not* supportive of BN's assertion that new code section 15.034 is to be interpreted as mandatory. *See, e.g.*, McDonald, *Texas Civil Practice*, § 4.31 (Vol. I Cum.Supp. 1985); 3 Dorsaneo, *Texas Litigation Guide*, §§ 61.01, 61.02 (1985).

■ BN next argues that recognized rules of statutory construction require Code section 15.034 to be interpreted as a mandatory venue provision. This argument has several different facets. First, BN acknowledges the text of section 15.034 conflicts with the subchapter heading: specifically the text contains the word "shall," denoting mandatory import, but the subchapter heading characterizes its contents as permissive. BN claims that because precedent dictates that statutory titles and headings are not part of the substantive law, we need not consider the subchapter heading under which section 15.034 appears for purposes of statutory construction. The

Texas Supreme Court has repeatedly held, however, that in construing a statute, a court must ascertain the legislative intent by looking to the entire act including the *caption* and *body*. *Trawalter v. Schaefer*, 142 Tex. 521, 179 S.W.2d 765, 767 (1944); *Missouri, K. & T. Ry. Co. v. Mahaffey*, 105 Tex. 394, 150 S.W. 881 (1912). *See also Southwestern Bell Telephone Co. v. Houston Independent School District*, 397 S.W.2d 419 (Tex.1965). *Contra Woodruff v. City of Laredo*, 686 S.W.2d 692, 695–96 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Byke v. City of Corpus Christi*, 569 S.W.2d 927, 931–32 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Of course, where the title or headline is inserted by the publisher and not the legislature, the court need not consider it for construction purposes. *Drake v. Yawn*, 248 S.W. 726 (Tex.Civ.App.—Beaumont 1923, writ ref'd).

BN secondly argues that established rules of statutory construction mandate that words used in a statute be accorded their plain meaning. *Second Injury Fund v. Keaton*, 162 Tex. 250, 345 S.W.2d 711 (1961). The plain meaning of the word "shall," BN submits, "is a word of command, and one which has always or which must be given a compulsory meaning." Black's Law Dictionary, at 1233 (5th ed. 1979); *Ramirez v. State*, 550 S.W.2d 121 (Tex.Civ.App.—Austin 1977, no writ). *But see Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956).

■ There is no doubt that the presence of the word "shall" in the text of section 15.034 and the subchapter heading "Permissive Venue" creates something of an inconsistency. However, the fundamental and dominant rule controlling the construction of a statute is to ascertain, if possible, the intention of the legislature expressed therein. Legislative intent must be ascertained from the *entire act* and not from isolated portions thereof. *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777 (Tex.1974). Furthermore, in arriving at the legislative intent and purpose, it is proper to consider the history of the subject matter involved,

the end to be obtained, *the mischief to be remedied,* and the purpose to be accomplished. *Davidson v. Upton County Water Dist.,* 624 S.W.2d 927, 931 (Tex.App.—El Paso 1981, writ ref'd n.r.e.). *See also Chisholm, supra.*

The legal community's discontent with the original venue statute is well documented. *See, e.g.,* Spradley, *Texas Venue: The Pathology of the Law,* 36 S.W.L.J. 645 (1982); Guittard & Tyler, *Revision of the Texas Venue Statute: A Reform Long Overdue,* 32 Baylor L.Rev. 561 (1980). In 1983, reform and relief came in the form of Senate Bill 898 which was born from negotiations and compromise between competing interest groups. Part of the negotiations led to the agreement that there would be no floor debates on or amendments to the bill and there were in fact none. Consequently, we are deprived of the traditional legislative history that accompanies most legislation. *See generally* Price, *New Texas Venue Statute, supra* at 857. Even without the aid of legislative history, however, and regardless of the presence of the word "shall" in section 15.034, we find there is ample justification within the statute itself to hold that section 15.034 is permissive.

As stated, when a statute is amended the entire statute must be construed so as to be a harmonious whole, all sections mutually acting upon each other. *Schlichting v. Texas State Board Medical Examiners,* 158 Tex. 279, 310 S.W.2d 557 (1958). This rule of statutory construction is traditionally referred to as *in pari materia. See generally Texas State Board v. Fenlaw,* 357 S.W.2d 185 (Tex.Civ.App.—Dallas 1962, no writ). When the venue statute is read in its entirety, it becomes clear that despite the inclusion of the word "shall," section 15.034 is a permissive provision. For example, section 15.061, found in subchapter D of the Code and reprinted above, concerns joinder of defendants or claims. The joinder rule is predicated on the mandatory and permissive distinctions made by the two prior subchapters. In effect, the rule provides that after the joining of parties, if one of the claims or causes of

action is governed by a mandatory venue provision as enumerated in *Subchapter B,* on proper objection, the cause must be transferred. Additionally, Subchapter E, concerning suits brought in justice courts, provides that a suit against a railroad for *personal injury* or property damage *may* be brought in a precinct through which the railroad runs. Thus the joinder and justice court provisions, while not independently conclusive, support a finding that the legislature intended that the venue law governing suits against railroads for personal injury be permissive and not mandatory in character.

On the issue of statutory construction, BN makes one more incisive argument deserving of attention. BN submits that section 15.034, which addresses personal injury actions against railroads, is specific in nature, while section 15.036, which does not purport to govern venue in personal injury actions, is general in character. In this regard, BN contends a specific provision must control a general provision when the two are in conflict. *Ayre v. Brown & Root, Inc.,* 678 S.W.2d 564 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The Code Construction Act, made applicable to the venue provision by the Civil Practice & Remedies Code, provides:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given both. If the conflict between the provision is irreconcilable, the special or local provision prevails as an exception to a general provision, *unless the general provision is the later enactment and the manifest intent is that the general provision prevail.* (emphasis supplied)

Tex.Rev.Civ.Stat.Ann. art. 5429b–2, § 3.06 (Vernon Supp.1985). We are guided by the Construction Act as well as the circumstances out of which the venue statute was amended in holding that the manifest intent of the legislature, as gleaned from the entire statute, was to make the venue rule as regarding personal injury claims against railroads permissive in nature.

■ In any event, lacking any legislative history or other specific indicia to the contrary, we, as an intermediate appellate court, cannot presume the legislature erred in its placement of statutory provisions under particular subchapter captions. The mere unchanged wording of the provisions themselves is not sufficient evidence of error. This is particularly true where the legislature designed the statute so that the subchapter headings play an important role in the overall statutory scheme. This latter factor, when coupled with the presumption that the legislature would not perform a useless act, further buttresses the conclusion that the legislature intended to make the venue provisions for such suits against railroad companies permissive and not mandatory. If such a significant oversight was made, it is for the legislature and not the courts to acknowledge and set it right by amendment.

■ BN next argues that assuming § 15.034 does not exclusively control the venue determination, § 15.036 has *no* applicability because BN owns no railroad tracks in Brazoria County. BN's argument ignores the plain meaning of § 15.036 which is that suits against railroads may be brought in any county into which the railroad is *operated.* As we stated at the outset, BN operates trains through Brazoria County on tracks leased from the Atchison, Topeka and Santa Fe Railroad Company. These trains are manned by BN employees, subject to BN operating rules and union agreements, and supervised by BN officials. Therefore, we find that pursuant to § 15.036, suit was properly filed and maintained in Brazoria County. *Cf. Houston Contracting Co. v. Texas & Pacific Ry. Co.,* 361 S.W.2d 251 (Tex.Civ.App.—Beaumont 1962, no writ).

Finally, we have reviewed BN's other arguments pertaining to the venue issue, including those regarding public policy considerations, and find them unpersuasive. In light of today's high-tech world, the low cost of modern transportation, and communication advances, the arguments of inconvenience and expense become less and less

compelling as a basis for supporting or overturning a particular statutory construction. It appears, in fact, that the major venue concern of the litigants in such cases as this is to obtain what they perceive to be the most favorable community climate for their particular side of the case. If this is a realistic factor (which we cannot and do not purport to decide), then *each side* would seem to have an obligation to his client to seek the most favorable venue *consistent with the statutory law.* Criticism for such venue zeal is frequent but generally unjustified.

In reviewing this venue issue we have had, in addition to excellent and exhaustive briefs prepared by counsel for both parties, the benefit of several scholarly *amicus curiae* briefs filed on behalf of appellant. Nonetheless, for the reasons stated, BN's first two points of error, which complain of the trial court's denial of its motion to transfer venue, are overruled.

In its final two points of error, BN contends the trial court erred in admitting the expert testimony of two doctors over BN's objections concerning qualifications. After review of the applicable law and the evidence presented below, we find no error in the trial court's rulings.

Expert testimony is permitted where "scientific, technical, or other specialized knowledge will *assist* the trier of fact to understand the evidence or to determine a fact issue...." Tex.R.Evid. 702. It is well settled that a trial court's determination as to whether a witness qualifies as an expert will not be disturbed on appeal unless a clear abuse of discretion is shown. *Milkie v. Metni,* 658 S.W.2d 678, 679 (Tex. App.—Dallas 1983, no writ); *Thomas v. St. Joseph Hospital,* 618 S.W.2d 791, 794 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Harvey sustained a severe and permanently disabling back injury as a result of the accident made the basis of this lawsuit. In March of 1983, seven months after the injury, Harvey underwent back surgery which was unsuccessful in providing him with permanent relief. About seventeen months after the accident, he began to

experience problems with his bladder. The primary problem consisted of an inability to urinate. One of the injuries Harvey sought damages for is a medical condition known as neurogenic bladder.

Dr. Schade, a board certified anesthesiologist with a subspeciality in the field of acute and chronic pain control, became involved in Harvey's back surgery. Dr. Schade began a series of spinal injections to relieve Harvey's pain. Thereafter, Dr. Schade hospitalized Harvey and obtained consultations and assistance in treating him from a neurosurgeon, an orthopedic surgeon and Dr. Splann, a urologist. With the assistance of these specialists, Dr. Schade determined that Harvey suffered from a condition known as arachnoiditis that is an inflammation of the lining of the spinal canal, which results in scarring. This scarring, Dr. Schade testified, can lead to nerve impingement and dysfunction, which in turn can cause a neurogenic bladder. Both Doctors Schade and Splann were of the opinion that Harvey's neurogenic bladder was related to the September 1982 accident.

BN first complains the trial court erred in permitting Dr. Schade to testify and render expert testimony relating to the field of urology because anesthesiology, and not urology, is his field of expertise. In support of its argument, BN cites *Milkie v. Metni, supra* for the proposition that a medical doctor who practices in one field of medicine is not automatically qualified to testify as an expert in every other field of medicine. However, the correlative principle to that articulated in *Milkie* is before a doctor may testify about a particular field of medicine, *all that is necessary is that he possesses knowledge and skill not possessed by people generally. Hardware Mutual Casualty Co. v. Wesbrooks*, 511 S.W.2d 406 (Tex.Civ.App.—Amarillo 1974, no writ). After reviewing the record for evidence of Dr. Schade's knowledge, training and experience, both in his field and in treating Harvey, we find the trial court did not abuse its discretion in determining that Dr. Schade's testimony would *assist* the trier of fact in understanding the evidence.

Finally, BN claims the trial court erred in admitting Dr. Splann's testimony. BN specifically complains Dr. Splann should not have been permitted to testify as to the cause and prognosis of Harvey's bladder condition because Harvey failed to introduce any preliminary evidence showing Dr. Splann possessed the necessary training, skill or knowledge to qualify as an expert in *any* field of medicine. A review of the record, however, reveals ample evidence that Dr. Splann possessed the requisite background to qualify as an expert on the issue of Harvey's bladder condition. First, Dr. Schade testified Dr. Splann is a competent specialist in the field of urology. Dr. Splann himself testified he is a urologist and that he has treated numerous patients with neurogenic bladders. Additionally, Dr. Splann's business card was admitted into evidence advertising Dr. Splann as a medical doctor, a Diplomate of the American Board of Urology and Fellow of the American College of Surgeons. Furthermore, Dr. Splann extensively treated Harvey for his urologic condition. Therefore, we find the trial court did not abuse its discretion in admitting Dr. Splann's testimony.

Accordingly, BN's last two points of error are overruled and the judgment of the trial court is affirmed.