Robert A. HEISE and Grace N. Heise, Individually and as Sole Heirs and Representatives of the Estate of Kathleen Heise, Deceased, Appellants,

v.

PRESBYTERIAN HOSPITAL OF DALLAS ET AL., Appellees.

No. 11–93–136–CV.

Court of Appeals of Texas, Eastland.

Nov. 23, 1994.

Rehearing Overruled Dec. 29, 1994.

David R. Weiner, John K. Horany, James E. Girards, Dallas, for appellants.

John H. Martin, Deborah G. Hankinson, Beverly Ray Burlingame, Thompson & Knight, Gerald Benson, Emily G. Tobolowsky, Prager & Benson, Dallas, for appellees.

## OPINION

BROWN, Justice.

This is a wrongful death case. Robert A. Heise and Grace N. Heise brought a medical malpractice case against Dr. Michael B. West, Dr. Albert C. Broders, Dr. Franklin J.

Fleischhauer, Dr. Dirk A. Frater, and Presbyterian Hospital of Dallas claiming that the physicians and hospital nurses failed to timely diagnose and treat their daughter Kathleen who suffered a head injury following a nighttime attack by an unknown assailant. Based on jury findings, the trial court entered judgment for the physicians and the hospital. The Heises abandoned their claim against Dr. West, and they appeal. We reverse and remand.

Kathleen Heise was assaulted on the evening of April 7, 1988, while walking on Greenville Avenue in Dallas. A witness to the assault testified that the assailant struck Kathleen with a forearm to her neck. This witness and another passerby, who stopped to help, testified that they saw Kathleen Heise lying unconscious on the sidewalk. Paramedics who responded to the call for assistance found Kathleen conscious; but she did not respond to their questions. Her neurological status was noted as "disoriented." The paramedics acknowledged that her disorientation and her behavior were consistent with a head injury. The paramedics documented witness reports that Kathleen Heise had been struck in the throat with a forearm and that her purse had been taken. They also noted the red marks on her throat.

Kathleen Heise was taken to the Presbyterian Hospital Emergency Room, arriving at 9:30 p.m. She remained there until 1:45 p.m. the following day. When she arrived, she was nauseated, displayed confusion, was agitated and restless, and was uncooperative with the nurses and doctors.

Dr. West, at the request of a nurse, tried to convince Kathleen that she needed to stay at the emergency room. He did not examine her and spent less than a minute with her. Dr. Broders was her doctor from 9:30 p.m. until 6:30 a.m. the following morning. He testified that he did not conduct a physical examination because Kathleen pushed his hand away when he attempted to examine her. He did not observe any adverse signs of severe injury and did not order a CT scan or any other tests.

Dr. Frater, who relieved Dr. Broders, was able to perform a physical examination. He ordered several tests, including a chest X-ray; but he did not order a CT scan of the head or call in a neurosurgeon. Dr. Frater did not believe that Kathleen had suffered a neurological injury. Dr. Frater discharged the patient around 1:30 p.m. on the 8th.

Later, on the evening of the 8th, Kathleen began vomiting and complained of an excruciating headache. She was taken back to the Presbyterian Hospital Emergency Room. Dr. Fleischhauer was the physician on duty. He examined Kathleen, ordered a CT scan of the head, and called in a neuroradiologist. To keep her calm for the scan and to relieve her pain, Dr. Fleischhauer prescribed Demerol together with Phenergan to reduce nausea. Shortly after the CT scan, Kathleen went into respiratory arrest. She was quickly revived; and the neurosurgeon, Dr. Richard L. Weiner, indicated to Dr. Fleischhauer that the arrest was caused by Kathleen's head injury.

The CT scan revealed that Kathleen had suffered a severe head injury. She had a fracture at the back of her head, and her brain was swelling which had to be controlled or she would probably die. She was pronounced dead at 11:20 a.m. on April 9. The autopsy concluded that she died as a result of craniocerebral injuries.

During trial, Dr. Frederick Joseph Condo, an emergency room doctor from California, was called by the Heises to testify that, if the doctors had performed a CT scan during the first emergency room visit, Kathleen could have been properly treated. He further testified that their failure to do so was negligence which proximately caused the death of Kathleen. Dr. Condo testified as to the standard of care, negligence, and foreseeability. When he attempted to testify regarding the cause in fact, appellees objected to his qualifications as an expert. It was their contention that only a neurosurgeon should testify that the failure to immediately perform a CT scan leading to an untreated brain injury proximately caused the death of Kathleen Heise. The trial court agreed, and the Heises' theory of recovery failed without testimony of the cause in fact.

■ Appellants urge two points of error. In their first point of error, the Heises urge that the trial court abused its discretion in excluding the testimony of Dr. Condo on the issue of whether the negligence of appellees was the cause in fact of Kathleen Heise's death because Dr. Condo was qualified to render an opinion on this aspect of proximate cause.[1]

■ When reviewing a trial court's decision excluding evidence because a doctor is not qualified as an expert in a particular area, the proper standard of review is whether there was an abuse of discretion in such a ruling. *McKinney v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania,* 747 S.W.2d 907 (Tex.App.—Fort Worth 1988), *aff'd,* 772 S.W.2d 72 (Tex.1989). If an abuse of discretion is established, reversal will follow if it appears that the whole case turns on this particular evidence which was excluded. *Guentzel v. Toyota Motor Corporation,* 768 S.W.2d 890 (Tex.App.—San Antonio 1989, writ den'd).

■ The court in *Hart v. Van Zandt,* 399 S.W.2d 791, 797 (Tex.1965) (quoting *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949)), held that a cause of action against a doctor for medical malpractice requires proof:

[B]y a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries.

The requirement of the "same school of practice" means that, if the defendant doctor is a medical doctor, it is sufficient that the expert medical witness is also a medical doctor. *Hart v. Van Zandt,* supra. He need not be a specialist in the particular area in which he was called to testify, so long as he possessed knowledge and skill not possessed by people generally. *Burlington Northern Railroad Company v. Harvey,* 717 S.W.2d 371 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Hardware Mutual Casualty Company v. Wesbrooks,* 511 S.W.2d 406 (Tex.Civ.App.—Amarillo 1974, no writ). See TEX.R.CIV.EVID. 702. The fact that Dr. Condo is not a specialist in neurosurgery goes to his credibility with the jury, not the admissibility of his testimony. *Hardware Mutual Casualty Company v. Wesbrooks,* supra.

Dr. Condo was a medical doctor who practiced in the same field of medical practice as the defendant medical doctors. He outlined his education, training, background, and practice as an emergency room doctor. He testified that, in addition to his training and experience in emergency medicine, he was trained in neurology in medical school and during his residency and fellowship. Throughout his career in emergency medicine, he had treated patients with severe head injuries and was familiar with the risk to the patient for an undiagnosed head injury. He learned from working with neurosurgeons how they treat head injuries. We hold that the Heises met their burden of establishing Dr. Condo as a medical expert.

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Dr. Condo met the requirements of this rule for testimony on the issue of the cause in fact. He possessed knowledge and skill not possessed by people generally, and his testimony that the negligence of the doctors and nurses was a cause in fact of Kathleen Heise's death would have assisted the jury in determining this fact issue. Therefore, the trial court abused its discretion in excluding Dr. Condo's testimony on such issue.

■ Reversible error does not occur in connection with evidentiary rulings unless the whole case turns on the particular evidence excluded. *Guentzel v. Toyota Motor Corporation,* supra; *Shenandoah Associates*

---

1. Proximate cause consists of cause-in-fact and foreseeability. Cause-in-fact is "but for cause," meaning the negligent act or omission was a substantive factor in bringing about the injury and without which no harm would have occurred. *El Chico Corporation v. Poole,* 732 S.W.2d 306 (Tex.1987).

*v. J & K Properties, Inc.,* 741 S.W.2d 470 (Tex.App.—Dallas 1987, writ den'd). The record reflects that the instant case was strongly contested. Without the excluded testimony, the jury could not have properly found in the Heises favor on the liability issue submitted because Dr. Condo was the only expert witness offered by the Heises to testify that the negligence of the defendants was a cause in fact of Kathleen Heise's death. Therefore, the whole case turned on the excluded evidence. We hold that the error in excluding such testimony of Dr. Condo, if accepted by the jury, amounted to such a denial of the Heises rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. The first point of error is sustained.

In their second point of error, the Heises argue that the trial court erred in permitting Dr. Duke Staple Samson to testify because he had not been properly designated as an expert witness. We agree and address this point only to avoid further error.

Appellees attempted to supplement answers to interrogatories by adopting a codefendant's answers to the same interrogatories. A party may not adopt another party's answers to interrogatories as his own. *Baylor Medical Plaza Services Corporation v. Kidd,* 834 S.W.2d 69 (Tex.App.—Texarkana 1992, writ den'd); *American Cyanamid Co. v. Frankson,* 732 S.W.2d 648 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Furthermore, appellees failed to comply with TEX.R.CIV.P. 166b(6)(b). The point of error is sustained.

The judgment is reversed, and the cause is remanded to the trial court.

DICKENSON, J., not participating.

BROWN, J., sitting by assignment.