Timothy and Nancy KAHANEK, Individually and as Personal Representatives of the Estate of Kyndil Kahanek, Deceased Minor Child, and as Next Friends of Sommer Kahanek and Joshua Kahanek, Appellants,

v.

James H. ROGERS, Jr., M.D., Appellee.

No. 04–94–00663–CV.

Court of Appeals of Texas,
San Antonio.

June 7, 1995.

Valorie W. Davenport, Kathleen M. Denison, Law Offices of Valorie W. Davenport, Houston, for appellant.

W. Richard Wagner, J. Kevin Oncken, Patterson & Wagner, San Antonio, for appellee.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

CHAPA, Chief Justice.

This appeal demonstrates the different perceptions of two trial judges faced with virtually identical situations. Appellants, Timothy and Nancy Kahanek, filed a medical malpractice lawsuit individually and on behalf of the estate of Kyndil Kahanek, deceased minor child, and as next friends of Sommer Kahanek and Joshua Kahanek, as a result of the death of Kyndil Kahanek, their seven-year-old child. Dr. Sheldon Gross and appellee, Dr. James H. Rogers, were named among the defendants in the cause of action. The basis of the lawsuit was the alleged negligent use of the drug Tegretol and negligent treatment rendered to the child, Kyndil, who had been born with a congenital heart defect.

After Kyndil's death, the Kahaneks obtained the services of an attorney, and a lawsuit was filed on January 20, 1994. Because of the original attorney's alleged failure to diligently pursue discovery and preparation, he was substituted as counsel by another law firm on February 22, 1994. However, without having obtained any medical expert on behalf of the Kahaneks, the second law firm was permitted by the trial court to withdraw as counsel of record on April 18, 1994,[1] leaving appellants with no legal representation. On April 25, 1994, Dr. Gross filed a motion for summary judgment, which then made it virtually impossible for the appel-

---

1. The record reflects an uncontradicted contention of the Kahaneks that the second law firm withdrew because the medical affidavit promised by the first attorney never materialized, which would have made representation much easier.

lants to obtain the services of an attorney.[2] On May 18, 1994, appellants filed a pro se response to the Gross summary judgment motion and a verified motion for continuance, properly supported by affidavit. Although the response was pro se, appellants nevertheless managed to obtain and include a report from a medical expert consulting firm declaring that the case was of potential merit. The report, however, was not in an appropriate affidavit form.

The Gross summary judgment was granted on May 26, 1994. Three days earlier, on May 23, 1994, appellee Rogers had filed a motion for summary judgment and severance, placing the pro se appellants in an even more difficult position to obtain legal representation. On June 16, 1994, appellants filed a pro se verified motion for continuance in the Rogers case, supported by the affidavit of Nancy Kahanek, urging the court to grant additional time to procure summary judgment controverting proof. On June 22, 1994, a hearing on appellants' motion for continuance and Rogers's summary judgment motion was held.[3] Appellants urged their motion for continuance and appeared with attorney Valorie Davenport, who notified the court that she was prepared to enter the case only if the continuance was granted.[4] After

the trial court denied the continuance, attorney Davenport nevertheless officially assumed the legal representation of appellants. Davenport then filed a "Motion for Leave to File Response to [Rogers's summary judgment motion]," which re-urged the motion for continuance. The trial court again denied the continuance, but allowed appellants' to file their response, with its attached affidavits from the Kahaneks, a copy of information regarding Tegretol from the Physicians' Desk Reference (PDR), and a case summary report from the Santa Rosa Hospital. The court then granted Dr. Rogers's motion for summary judgment. It is this summary judgment and denied motion for continuance that are the subjects of this appeal.

Perhaps realizing potential error, the initial trial judge set aside the Gross summary judgment on July 18, 1994, and granted a new trial.[5] Nevertheless, based on substantially the same circumstances, the second trial judge denied appellants' motion for new trial of the Rogers summary judgment on August 15, 1994.[6]

The dispositive issue is whether the trial court erred in denying the motion for continuance of the Rogers summary judgment hearing. TEX.R.APP.P. 90. We hold that

2. The record reflects the appellants' contention that they exercised due diligence in attempting to obtain legal representation by approaching numerous attorneys. However, they stated that because of the pending summary judgment, they were repeatedly refused legal representation due to the lack of sufficient time to obtain the controverting medical evidence required in defending against the pending motion for summary judgment.

   Ironically, appellee's attorneys substantiated appellants' claims of due diligence by enumerating to the trial judges the numerous attorneys whom they knew the appellants had contacted, and who had rejected appellants' requests for legal representation.

3. It should be noted that the trial judge who acted upon the Gross summary judgment was not the same trial judge who acted upon appellee Rogers's summary judgment.

4. The appellants first requested that the trial court grant a continuance of only three weeks to obtain the necessary controverting medical affidavit. However, when it appeared the court was not so inclined, the request was modified to merely delay the summary judgment proceeding

long enough to obtain a proper faxed affidavit from Dr. Barry L. Singer, a board-certified specialist in internal medicine and hematology licensed to practice in Pennsylvania. During the proceeding, the trial court permitted attorney Davenport to contact Dr. Singer and advise him to forward by fax his affidavit of his opinion. Dr. Singer's report, not in affidavit form, was faxed to the court reporter during the proceeding. The court refused to consider the instrument, which was filed late.

5. Ironically, the record reflects that attorneys for Dr. Gross requested and were granted a continuance on the initial setting for appellants' Motion for New Trial, based on an unverified motion for continuance without proper supporting affidavits.

6. In appellants' Motions for New Trial in both the Gross and Rogers suits, the controverting affidavit of Dr. Singer had been obtained and copies were attached thereto. It also appears from the record that, by stipulation, everything that was before the first trial judge in the Motion for New Trial hearing in the Gross suit was also before the trial judge in the Motion for New Trial hearing in the Rogers suit.

under these circumstances, the trial court committed reversible error in denying the motion for continuance.

■ Texas Rule of Civil Procedure 166a(g) permits a continuance of a summary judgment hearing to obtain necessary affidavits when "it appear[s] from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition." Tex.R.Civ.P. 166a(g). "Rule 251, T.R.C.P., directs that a continuance shall not be granted 'except for sufficient cause'. Of course the absence of a material witness is 'sufficient cause', but only if proper diligence has been used to procure the testimony of the witness." *Fritsch v. J.M. English Truck Line, Inc.,* 151 Tex. 168, 246 S.W.2d 856, 858 (1952). When bringing a suit against a medical doctor, the claimant must offer proof by a doctor whose field of practice recognizes the particular subject of inquiry that the diagnosis or treatment complained of constituted negligence and that it was a proximate cause of the patient's injuries. *Hart v. Van Zandt,* 399 S.W.2d 791, 797 (Tex.1965); *see Heise v. Presbyterian Hospital,* 888 S.W.2d 264, 266 (Tex.App.—Eastland 1994, n.w.h.); *Burlington Northern R. Co. v. Harvey,* 717 S.W.2d 371, 378 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Although the granting or denial of a continuance is addressed to the sound discretion of the court, "[t]he exercise of sound discretion ... is always subject to review, and when a first motion [for continuance] substantially complies with the rules, there is no presumption that the court did not abuse its discretion and it must be shown from the record that the exercise of discretion was justified." *Garza v. Serrato,* 699 S.W.2d 275, 281 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). "If the motion [for continuance] is verified and uncontroverted, the factual allegations must be accepted as true." *Id.* at 281; *see Piedmont Fire Ins. Co. v. Dunlap,* 193 S.W.2d 853, 856 (Tex.Civ.App.—Galveston 1946, writ ref'd n.r.e.).

■ In *Villegas v. Carter,* 711 S.W.2d 624 (Tex.1986), the Texas Supreme Court addressed the significance of legal representation in connection with a motion for continuance:

> The granting or denial of a motion for continuance is within the trial court's sound discretion. The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion. When the ground for the continuance is the withdrawal of counsel, movants must show that the failure to be represented at trial was not due to their own fault or negligence. Generally, when movants fail to comply with Tex.R.Civ.P. 251's requirement that the motion for continuance be "supported by affidavit," we presume that the trial court did not abuse its discretion in denying the motion. It would be unrealistic, however, to apply this presumption to lay movants who without fault have their attorney withdrawn.
>
> The right to counsel is a valuable right; its unwarranted denial is reversible error. Therefore, when a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. Before a trial court allows an attorney to withdraw, it should see that the attorney has complied with the Code of Professional Responsibility:
>
> > [A] lawyer should not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules.

*Id.* at 626 (citations omitted) (quoting DR2–110(A)(2) of the Code of Professional Responsibility).

This record reflects that appellants were involved in a lawsuit which not only required expert assistance in the field of law, but also in the field of medicine. *See Hart,* 399 S.W.2d at 797. Shortly after the filing of the suit, appellants' attorney was replaced by another law firm because of alleged lack of diligence in preparing the case. Shortly

thereafter, the trial court permitted the second law firm to withdraw without seeing to it that the firm had "taken reasonable steps to avoid foreseeable prejudice to the rights of [the appellants]" or "allowing time for employment of other counsel," as required by the Texas Supreme Court. *Villegas,* 711 S.W.2d at 626. The trial court further abused its discretion in denying the appellants' motion for continuance, thereby failing to "give the [appellants] time to secure new counsel and time for the new counsel to investigate the case and prepare for trial" after allowing the attorneys to withdraw, which is also required by the Texas Supreme Court. *Id.*

As a result, appellants were left without legal representation or medical expertise to respond to both motions for summary judgment. This situation exemplifies the wisdom of the requirements imposed by the Texas Supreme Court on trial courts before they may permit attorneys to simply withdraw from representing clients. *See id.* Permitting appellants' attorneys to withdraw under these circumstances made it virtually impossible for appellants, who were without the critically required controverting medical evidence, to obtain legal representation in the face of looming motions for summary judgment.

Appellants' verified motion for continuance of the Rogers summary judgment hearing was supported by affidavit and complied with the requirements of both Rule 251 and Rule 166a(g). Since appellants' motion for continuance was properly "verified and uncontroverted, the factual allegations [should have been] accepted as true." *Garza,* 699 S.W.2d at 281. In fact, the allegations of due diligence in appellants' motion regarding their attempts to obtain legal representation were further substantiated at the hearing by appellee's counsel. *See supra* note 2. As this was the first motion for continuance and substantially complied with the rules, "there is no presumption that the court did not abuse its discretion and it must be shown from the record that the exercise of discretion was justified." *Garza,* 699 S.W.2d at 281. The record fails to reflect that the exercise of discretion was justified under these circumstances. Considering the foregoing and the value of the right to counsel, *see Villegas,* 711 S.W.2d at 626, we hold that the trial court abused its discretion in denying the motion for continuance.

The judgment is reversed and remanded.