Affirmed and Opinion filed _____________, 2002















Affirmed and Opinion
filed August 8, 2002.                                                     

 

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00536-CV

____________

 

STEPHEN PHILLIP
CARTER, INDIVIDUALLY, and as NEXT FRIEND of JESSICA DAWN CARTER, Appellant

 

V.

 

BRUCE MACFADYEN,
M.D., and MEMORIAL HERMANN HEALTH SYSTEM, INC., d/b/a HERMANN
 HOSPITAL, Appellees

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the
215th District Court

Harris
 County, Texas

Trial Court Cause
No. 99-56064




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I
O N

On August 27,
 1997, Bruce MacFadyen, M.D. performed
surgery on Stephen Phillip Carter at Hermann
 Hospital to correct a blockage in
his bile duct.  Following surgery, Carter
was placed in the intensive care unit. 
While there, his physical condition deteriorated, and eventually leaks
in both his bile duct and duodenum were discovered.  Abdominal sepsis and other problems resulted
in Carter’s hospitalization until November 1997.  

Carter filed this health care liability claim pro se in November 1999, two years after
discharge.  Hermann
 Hospital was served promptly, but Carter
did not serve Dr.  MacFadyen
until eight months later.[1]  Little happened in the litigation until the
fall of 2000, when Carter finally obtained counsel, Hermann
 Hospital moved for summary judgment
on no-evidence grounds, and Dr. MacFadyen did the same
based on limitations.  The trial court
granted the defendants’ motions, and Carter appeals.  

The primary question presented is whether the diligent —
indeed, almost heroic — efforts of Carter’s new attorney can overshadow the
much less diligent efforts of Carter himself while he acted pro se. 
Finding we must judge diligence based on all the facts rather than
merely those occurring after counsel was retained, we agree with the trial
court those efforts were too little and too late, and thus affirm.

                                                 Carter’s
Motion for Continuance

Hermann Hospital
filed its original answer on December
 10, 1999, and at the same time served requests for disclosure,
production, and interrogatories on Carter. 
The parties agree that because there was no pleading or court order to
the contrary, the default discovery period was to end ten months later, on October 10, 2000.  See Tex.
R. Civ. P.  190.3
(b)(1)(B)(ii).  Hermann filed its motion
for summary judgment on July 21, 2000, more than eight months after Carter’s
petition, and less than three months before the end of discovery.  Two weeks later, Carter retained
counsel.  The motion was granted on August 15, 2000, almost two months
before the end of the discovery period under Rule 190.3.  

In his first point of error, Carter argues the trial
court should have granted his motion to continue the summary judgment hearing.[2]

We review the trial court’s ruling for an abuse of discretion.  See Clemons v. State Farm Fire & Cas. Co., 879 S.W.2d 385, 393
(Tex. App.—Houston [14th Dist.] 1994, no writ). 


Generally, it is not an abuse of discretion to deny a
motion for continuance if a party has received the 21-days’ notice required by
Rule 166a(c).  Id. at 394.  A party seeking more time to oppose a summary
judgment must file an affidavit describing the evidence sought, explaining its
materiality, and showing the due diligence used to obtain the evidence. Tex. R. Civ. P.
166a(g), 251, 252.  The affidavit must
show why the continuance is necessary; conclusory
allegations are not sufficient.  See Nat’l Union Fire Ins. Co. of Pittsburgh, PA
v. CBI Indus., Inc., 907 S.W.2d 517, 520–22 (Tex. 1995) (holding further
time for discovery unnecessary as construction of unambiguous contract required
no discovery).  

Here, Carter’s counsel filed a two-paragraph affidavit stating
he had been retained ten days before the scheduled hearing, and needed more
time to obtain a complete copy of the pleadings and conduct “both written and
oral discovery.”  No doubt this was true,
as Carter had conducted absolutely no discovery up to that time.  But without any specifics, the affidavit gave
no basis for the trial court to weigh the materiality of the requested
discovery or the length of continuance that would be needed.  Further, although Carter’s attorney averred
the request for continuance was “not due to any lack of diligence on the part
of the Plaintiff,” he gave no explanation for why nine months had passed
without any discovery.  A last minute
attempt does not constitute diligence.  See
Hatteberg v. Hatteberg,
933 S.W.2d 522, 527 (Tex. App.—Houston [1st Dist.] 1994, no writ).[3]  Thus, we find the trial court did not abuse
its discretion in denying the request, and overrule Carter’s first point of
error.

                                                     Adequate
Time for Discovery

In his second issue, Carter argues that whether or not
his motion for continuance was proper, the summary judgment was improper
because an adequate time for discovery had not passed as a matter of law.  Again, we review for an abuse of
discretion.  See Specialty Retailers, Inc. v. Fuqua, 29 S.W.3d 140, 145
(Tex. App.—Houston [14th Dist.]
2000, pet. denied).  

Hermann’s no‑evidence motion for summary judgment could
be filed only after an “adequate time for discovery.”  Tex. R.
Civ. P. 166a(i).  While a comment to rule 166a states that “ordinarily
a motion . . . would be permitted after the [discovery] period but not before,”
we do not read the comment to prohibit an earlier motion in all cases.  See Tex. R. Civ. P. 166a
cmt. (1997); Gourrier v. Joe
Myers Motors, Inc., No. 14-00-01165-CV, __ S.W.3d __ (Tex.
App.—Houston [14th Dist.] 2002, no
pet.).  Obviously, additional discovery
is a waste of time and expense if it will make no difference.  See Nat’l Union Fire Ins., 907 S.W.2d at 522 (holding appellate court
erred in finding summary judgment premature, as construction of unambiguous
contract required no additional discovery). 
Instead, an adequate time for discovery depends upon the nature of the
claims, the evidence needed to controvert the motion, the length of time the
case has been on file, and any deadlines set by the court.  See Specialty Retailers, 29 S.W.3d at
145.

Here, Hermann filed its motion for summary judgment more
than eight months after Carter’s petition. 
Generally, a
trial court may presume a plaintiff has investigated his own case prior to
filing.  McAllister v. Samuels, 857 S.W.2d 768, 773 (Tex. App.—Houston [14th
Dist.] 1993, no writ).  This is
especially true of health care liability claims, which require within six
months of filing an expert report establishing standard of care, negligence, and
causation.  See Tex. Rev. Civ. Stat.
Ann. art. 4590i, §§ 13.01(d), (r)(6) (Vernon Supp. 2002). 

Hermann’s motion was filed less than three months — and
granted less than two months — before the end of the discovery period.  Carter’s response to Hermann’s motion did not
indicate why the months past were insufficient for adequate discovery, or what specific
discovery needed to be completed. 
Instead, he only indicated that, having recently retained counsel, he
was finally ready to start. 

Because local dockets, scheduling practices, disruptive
weather, the assumptions of the bar, and a myriad of other factors may affect
an “adequate time for discovery,” we must defer to a trial court’s discretion,
absent abuse.  See generally McClure v. Attebury, 20
S.W.3d 722, 729–30 (Tex. App.—Amarillo 1999, no pet.) (adopting
abuse-of-discretion standard in part because of trial court’s broad powers over
discovery matters).  Because reasonable
minds could disagree here, we cannot substitute our judgment for that of the
trial court.  See City of Pharr v. Tippitt, 616 S.W.2d
173, 176 (Tex. 1981) (explaining
that when reasonable minds could differ, no abuse of discretion was shown).  We overrule Carter’s second point of error.

                                                  Hermann’s
No-Evidence Motion

Despite his objections to the trial court’s deadlines,
Carter’s counsel was able to file a response to Hermann’s no-evidence summary
judgment motion, which challenged every element of Carter’s health care liability
claim.  In his third point of error,
Carter argues his expert’s affidavit raised a material fact issue on every
element.  We review the evidence in the
light most favorable to Carter to determine if he did so.  Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 208 (Tex.
2002). 

The only evidence Carter filed was
the affidavit of Dr. Charles Marable; the only
portion of that affidavit addressing the elements of Carter’s claims is the
following:

    The Herman[n] Hopsital
[sic] owes a well-recognized duty of care to monitor its patients and provide
competent staff trained to diagnose and care for patients that have suffered
surgery complications. It is my expert opinion . . . that Herman[n] Hospital
breached its duty to Stephen Carter. 
Further, [i]t is my opinion that the failure
to properly diagnose, monitor, and treat Mr. Carter by intensive care staff at Herman[n]
Hospital is below the accepted standard of care.

 

    As a result of this negligent activity, the
patient required ICU placement, underwent renal failure, had multiple GI
infections and required multiple procedures such as a jejunostomy
and gastrostomy tube. 
The patient underwent a 3-month stay in the hospital with extensive
injuries, and has been hospitalized over 20 times since his release from Herman[n]
Hospital.  It is my expert opinion that
the breach of the standard of care by Herman[n] Hospital as described above was
a direct cause of Mr. Carter’s injuries and the adverse complications that he
suffered as a result of his surgery.

 

This affidavit
contains not one specific about what the intensive care staff should have done
to meet the standard of care or why the outcome would have been different had things
been done correctly.  See Hall v. Tomball Nursing Ctr. Inc.,
926 S.W.2d 617, 620 (Tex. App.—Houston
[14th Dist.] 1996, no pet.) (finding affidavit conclusory
because it failed to specify what actions met duty to monitor).  It is specific about the complications Carter
suffered, but excepting that (and the names of the parties), this affidavit
could be filed in every health care claim brought against a hospital.  This is simply not enough.  “An expert’s simple ipse dixit is insufficient to establish a
matter; rather, the expert must explain the basis of his statements to link his
conclusions to the facts.”  Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex.
1999) (holding statement that defendant “met the standard of care” insufficient
for summary judgment).  “Conclusory statements by an expert are not sufficient to support
or defeat summary judgment.”  Blan v.
Ali, 7 S.W.3d 741, 748 (Tex. App.—Houston [14th Dist.] 1999, no pet.)
(holding affidavit that failed to explain how better treatment would have
produced better outcome was insufficient to create a fact issue).   We overrule Carter’s third point of error. 

In a cross-point, Hermann argues the trial court should
have dismissed Carter’s claim for failing to file an adequate expert
report.  See Tex. Rev. Civ. Stat.
Ann. art. 4590i, § 13.01(d) (Vernon Supp. 2002).  In view of our decision to affirm
Hermann’s motion for summary judgment, the cross-point is moot. 

                                            Dr.
MacFadyen’s No-Evidence Motion

            In
his fourth and fifth points of error, Carter argues the trial court erred in
granting Dr. MacFadyen’s motion for summary judgment based
on limitations.  It is
undisputed that Carter filed suit against Dr. MacFadyen
before the limitations deadline, but served him after it.  

            Filing
suit interrupts
limitations only if a plaintiff exercises diligence in serving the defendant.  Murray
v. San Jacinto Agency, Inc., 800 S.W.2d 826, 830 (Tex.
1990).  When a defendant moves for
summary judgment and shows that service occurred after the limitations
deadline, “the burden shifts to the plaintiff . . . to explain the delay.”  Id.;
see also Brown v. Shores, 77 S.W.3d
884, 888–89 (Tex. App.—Houston
[14th Dist.] 2002, no pet.) (Brister, C.J.,
concurring) (discussing possible conflict between Murray and Zale Corp. v. Rosenbaum, 520 S.W.2d 889, 891
(Tex. 1975) (requiring plaintiff
merely to plead diligence)).  The
plaintiff’s evidence
must explain every period of delay. 
See Gant
v. DeLeon, 786 S.W.2d 259, 260 (Tex.
1990).  Once the plaintiff presents an explanation,
the burden shifts back to the defendant to show why those explanations are
insufficient as a matter of law.  Belleza-Gonzalez v. Villa, 57 S.W.3d
8, 11 (Tex. App.—Houston
[14th Dist.] 2001, no pet.).  


            Due diligence is
determined by looking at the time taken and the effort expended in procuring
service.  Webster v. Thomas, 5
S.W.3d 287, 289–90 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  Despite filing suit pro se, Carter is held to the same standard of diligence applicable
to a licensed attorney.  Weaver v. E‑Z
Mart Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.—Texarkana 1997, no pet.).


Carter’s allegations of negligence against Dr. MacFadyen stem from the surgeries performed on August 27, 1997.[4]
Carter filed suit within the limitations period on November 8, 1999.[5]  Carter, however, did not serve Dr. MacFadyen until July
 26, 2000, well after the limitations period had run.[6]  The summary judgment evidence on the question
of diligence and excuse consists of the following:

$                  
On November 8, 1999, Carter filed suit and requested service on Dr. MacFadyen.

 

$                  
On January 24, 2000, Deputy Constable Parr
received the citation for Dr. MacFadyen and attempted
service without success on January 25, 26, and 27, 2000.

 

$                  
Carter then hired a private process server who attempted service
unsuccessfully on February 15, February 22, March 16, and April 3, 2000.[7]     

 

$                  
Carter moved for substituted service on July 5, which was granted on
July 7, [8]
and accomplished by posting on July 26.

 

Here, there are several gaps as to which there is no evidence
of any efforts at service of process. 
First, two and one-half months passed between filing and the first
service attempts.  An affidavit by
Constable Richard Parr indicates the citation was transferred from Precinct 7
to Precinct 5, but does not indicate why.[9]  It was Carter’s responsibility, not the constable
or process server, to see that service was accomplished during this period.  See
Primate Const., Inc. v. Silver, 884
S.W.2d 151, 153 (Tex. 1994); Webster, 5 S.W.3d at 290–91 (finding
lack of diligence in part because of counsel’s mistake or negligence in sending
citation to wrong precinct).

Second, three months passed between April 3, 2000 and July 5, 2000, again without explanation.  Although Carter filed an affidavit stating
that he “was hospitalized at least two times while attempting to perfect
service on Dr. MacFadyen and my health was generally
poor,” the affidavit provides no specifics.[10]
As there were two hospitalizations, they obviously could not have covered the
entire period.  Nor is there any
explanation why either the hospitalizations or Carter’s pain rendered him
unable to act.

Finally, there is no explanation why Carter kept trying
to serve Dr. MacFadyen personally for four months,
when it was clear the doctor could not or would not cooperate with those
efforts.  Unlike many other due diligence
cases, the defendant’s usual place of business here was quite clear.  Although Constable Parr advised Carter in
January to seek substituted service, he did not do so until July.  See
Webster, 5 S.W.3d at 291 (finding no diligence as a matter of law when
plaintiff made efforts at service, but they were careless and not persistent).  A flurry of ineffective activity does not
constitute due diligence if easily available and more effective alternatives
are ignored.  Doue v. City of Texarkana, 786 S.W.2d 474, 477 (Tex. App.—Texarkana
1990, writ denied) (finding no diligence in locating defendant before citation
by publication when counsel searched many sources for correct address but ignored
address in his own files).

Thus, we agree with the trial court there is no evidence
of diligence for most of the eight months preceding Carter’s request for
substituted service.  We overrule
appellant’s fourth and fifth points of error, and affirm the judgment of the
trial court.

 

 

/s/     Scott Brister

         Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed August 8,
 2002.

Panel consists
of Chief Justice Brister and Justices Hudson and
Guzman.

Publish C Tex.
R. App. P. 47.3(b).

 

 











[1] Carter named two other doctors as defendants in the
suit, but this appeal does not concern them.





[2] Although we find no express ruling denying the
continuance, the trial judge’s order granting Hermann’s Motion for Summary
Judgment provides that he read the briefs (which included Carter’s request for
a continuance) and dismissed the claims against Hermann.  Thus, the trial judge implicitly denied
Carter’s motion for continuance.  See Tex. R. App. P. 33.1(a)(2)(A).  





[3] Several opinions suggest a continuance may be
required when a new lawyer is retained after a trial court allows counsel to
withdraw shortly before a trial or summary judgment.  See Villegas v. Carter, 711 S.W.2d 624,
626 (Tex. 1986); Kahanek v.
Rogers, 900 S.W.2d 131, 134 (Tex. App.—San Antonio 1995, no
pet.).  But withdrawal is subject to
trial court approval and the imposition of additional conditions. See Tex.
R. Civ. P. 10.  A different
situation is presented when a pro se
party retains an attorney for the first time at the last moment.  Moreover, any difficulties Carter may have had
in retaining counsel were not raised as grounds in the motion for
continuance.  





[4]
Although Carter asserts limitations did not
begin running until he was discharged from the hospital in November 1997, his
allegations against his surgeon stem from the surgery itself, and thus
limitations runs from that date.  See Kimball v. Brothers, 741 S.W.2d
370, 372 (Tex.
1987) (holding claim against anesthesiologist accrued on date of surgery, not
on date of subsequent discharge from the hospital).

 





[5] Limitations
was extended for seventy-five days because Carter sent a notice of claim.  See Tex.
Rev. Civ. Stat. Ann. art. 4590i, § 4.01(c) (Vernon Supp. 2002).

 





[6] Carter alleges the statute of limitations was tolled
because he was of “unsound mind” until his release from the hospital in
November 1997.  But the statute bars
application of this tolling provision to health care liability claims, and
Carter has not challenged the constitutionality of the statute.  See Tex.
Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp. 2002).; West v. Moore, No. 14‑00‑01478‑CV,
2002 WL 122147, at *3 (Tex.
App.—Houston [14th Dist.] Jan. 31, 2002, no pet.); Jones v. Miller, 964 S.W.2d 159,
163 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

 





[7] The affidavit by this server, John Brigham, also
alleged he attempted service on March 2, 2000, March 28, 2000, and April 6, 2000. Because Brigham mentioned none of these dates in his
earlier affidavit to support substituted service, Dr. MacFadyen
objected to consideration of them, and the trial court sustained the objection.
 Carter does not challenge that order on
appeal.  Even if we were to consider these
additional dates, it would only extend the time of attempted service three
days.  Dr. MacFadyen
also submitted an affidavit from Mary Carson, his senior staff assistant,
alleging that no one came to his office to attempt to serve citation between
November 1999 and July 26, 2000, and disputing Brigham’s assertion that he was told Dr.
MacFadyen was out of the office on certain dates. 





[8] Carter also argues there is an implied finding that
he exercised due diligence before July 26, 2000, because the trial court granted his motion for substituted
service. As Dr. MacFadyen points out, however, the
trial court is authorized to allow substituted service merely on a showing that
service “has not been successful.” Tex.
R. Civ. P. 106 (b).   





[9]
Carter’s counsel filed an affidavit regarding
conversations he had with various constables and staff about this transfer, but
the trial court sustained Dr. MacFadyen’s hearsay
objection to the affidavit, and again Carter does not assert error in that
ruling.

                                                          





[10]
After the hearing and without leave of court,
Carter filed almost identical affidavits from several family members indicating
he (1) was hospitalized in Lubbock for one day on May 16, 2000; (2) was hospitalized
in California for five days beginning June 25, 2000, during which he was in an
“atrocious” amount of pain; (3) traveled to California in between these dates to
try to find work; (4) suffered from “lengthy and difficult” recuperation after
each hospitalization; and (5) was in “constant contact” with his private
process server.  Because no order allowed
them to be filed late, we may not consider them.  See
Benchmark Bank v. Crowder, 919 S.W.2d
657, 663 (Tex. 1996). 

These affidavits were timely filed in the later
summary judgment proceedings regarding his daughter’s loss-of-consortium claim,
but were inconsequential because dismissal of Carter’s claim extinguished his
daughter’s derivative claim. See Nash v. Selinko, 14 S.W.3d 315, 318 (Tex. App.—Houston [14th
Dist.] 1999, pet. denied) (holding that running of limitations on parent’s
claim extinguishes child’s loss-of-consortium claim).